## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| AGINGO CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>ENVIRONMENTAL SYSTEMS RESEARCH INSTITUTE, INC.,<br><br>          Defendant. | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Agingo Corporation ("Agingo" or "Plaintiff"), for its Complaint against Defendant Environmental Systems Research Institute, Inc. ("ESRI" or "Defendant") hereby allege, on knowledge as to its own actions, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      This is a civil action for the infringement of U.S. Patent Nos. 7,657,406 ("the '406 Patent") and 8,195,436 ("the '436 Patent") (collectively, the "Patents-in-Suit" or "Patented Technology" / "Patented Technologies") pursuant to the Patent Laws of the United States, 35 U.S.C. § 100, *et seq*., including §§ 271(a), 271(b), and/or 271(c).

2.      The Patented Technology relates, *inter alia*, to critical infrastructure modeling and simulation in the field of geographic information systems ("GIS"). "GIS technology is a crucial part of spatial data infrastructure, which the White House defines as the technology, policies, standards, human resources, and related activities necessary to acquire, process, distribute, use,

maintain, and preserve spatial data.  *See* https://education.nationalgeographic.org/resource/geogr aphic-information-system-gis/.

3.     The Patented Technology allows for the GIS modeling and simulation of interdependencies among a plurality of infrastructures.  These infrastructures may be of different types, which include but are not limited to critical infrastructure models, such as financial models, population behavior models, physical models, data center rack models, and weather behavior, all of which are mapped by GIS.  Prior to the Patented Technology, GIS computers and software (*e.g.*, earlier versions of ESRI ArcGIS) had limited capabilities, which supported single infrastructure modeling and simulation, but could not support interactions across infrastructure layers and could not be migrated to a thin client interface, among other things.  *See* '436 Patent, at 4:56-64; 17:10-15.  Prior to the Patented Technology, GIS computers and software (*e.g.*, earlier versions of ESRI ArcGIS) did not support inter-process communication by the GIS software tool, among other things.  *See* '436 Patent, 17:20-25.

4.     Prior to being assigned to Agingo, the Patents-in-Suit were owned by IntePoint, LLC ("IntePoint").  IntePoint was founded in 2003 by Mr. Mark Armstrong and a group of specialists that apply research to applications for government and commercial enterprises.  IntePoint was a leading provider of innovative simulation and visualization solutions.  Through a relationship with the inventors and the University of North Carolina (Charlotte), IntePoint employed the latest advances in intelligent information systems, agent-based modeling and geo-spatial knowledge management.

5.     The Patents-in-Suit were assigned to IntePoint in 2006, and recorded with the United States Patent and Trademark Office ("USPTO") in October 2006.

6.      IntePoint's Patented Technology uniquely captures the various factors that impact performance, including physical and social network systems, applications and infrastructure.

7.      IntePoint's Patented Technology allowed users to view the impact of events as they cascade across their networks.  IntePoint's Patented Technology provides decision support for a wide range of business processes and enables users to probe alternatives scenarios and enhance transparency to better mitigate risk and derive plans in a world of complex cascading impact.

8.      IntePoint's Patented Technology provided its users with clarity to complex environments, modeling system-wide interdependencies across physical, virtual, and social networks.  IntePoint's Patented Technology provided its users with Advanced Visualization that yields a common picture which brings together different disciplines, fuses information from multiple sources, and provides intuitive control of analyses.  Agent-Based Simulation encapsulates the behavior of dynamic systems.  Together, these techniques capture a trace of cause and effect.  This enables users to quickly understand complex scenarios and volumes of seemingly unrelated data, to make better decisions faster.

9.      In 2007, the federal government praised IntePoint for being a leap ahead of rules-based simulations with a broader understanding of implications that helped the government and companies make more informed decisions.

10.     Under a non-disclosure agreement, IntePoint helped ESRI improve the ArcGIS product and services by implementing the innovations claimed in the Patents-in-Suit.  An ESRI engineer gave a video demonstration on the Patented Technology incorporated into ArcGIS at the 2009 ESRI Federal Users Conference, A GIS Conference for Government Professionals ("FedUC09") in Washington, D.C.  At the FedUC09, ESRI publicly praised and acknowledged

the company's use of the Patented Technology and even credited IntePoint during a video demonstration of ESRI's newly advanced ArcGIS.

11.    Subsequently, ESRI declined to license the Patented Technology or acquire IntePoint.

12.    IntePoint later partnered with Mr. Jacob Hall to further develop and market the Patented Technologies.  In 2009, Jacob Hall founded Agingo and currently serves as the Chief Executive Officer ("CEO") of Agingo.

13.    IntePoint assigned the Patents-in-Suit to Agingo in August 2017, and the assignments were recorded with the USPTO.  In 2021, Mark Armstrong (Founder of IntePoint) joined Agingo as Vice President of Sales.

14.    Even though ESRI declined to license the Patented Technology, ESRI continued to incorporate the Patented Technology into its products and services, such as the ArcGIS.

15.    To date, ESRI still uses and benefits from the Patented Technology.  Without license or authorization, ESRI uses and benefits from the Patented Technology in its ArcGIS products and services.

16.    Agingo brings this action for patent infringement to protect its rights and investments in the innovations embodied in the Patented Technology infringed by ESRI.

## THE PARTIES

17.    Plaintiff Agingo is a corporation organized under the laws of the State of Delaware with a principal place of business and corporate headquarters located at 1401 West Morehead Street, Suite 150, Charlotte, North Carolina, 28208.

18.    Defendant ESRI is a corporation incorporated in California with its headquarters at 380 New York Street, Redlands, California, 92373 with a regional office located in San Antionio

Texas, and satellite offices and business operations throughout Texas.  ESRI is registered to conduct business in the State of Texas.

## JURISDICTION AND VENUE

19.    This action arises under the patent laws of the United States, 35 U.S.C. § 100, *et seq.*, including §§ 271(a), §271(b), and/or 271(c).

20.    This Court has subject matter jurisdiction over the matters asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21.    This Court has personal jurisdiction over ESRI because ESRI has a regular place of business and is engaging in infringing activities throughout the State of Texas, particularly the Western District of Texas.

22.    ESRI has a regional office located at 19026 Ridgewood Parkway, in San Antonio, Texas.  In addition, ESRI has satellite offices located at 800 Gessner Road, in Houston, Texas, and 1202 Richardson Drive, in Richardson, Texas.

23.    According to ESRI, its "San Antonio regional office is devoted to offering ArcGIS," (*i.e.*, an infringing product and services), "the leading mapping and spatial analytics software, to local communities."    *See*  https://www.esri.com/en-us/about/about-esri/san-antonio/overview.  Furthermore, ESRI states "[w]ith over 30 years as a regional office and a team of 60 employees, our Texas office is well equipped to serve the many thriving industries of the state."  *See id.*  For example, ESRI's San Antonio regional office "host[s] several key events, including the Esri Energy Resources GIS Conference, the Esri Gulf Coast User Conference, and GIS Day.  In addition, we provide support for a range of regional events, including the South Central Arc User Group (SCAUG) Conference and the Texas GIS Forum."  *See id.*  In addition, ESRI acknowledges that "[t]he San Antonio community is full of GIS users, developers, data scientists, and community stakeholders."  *See id.*

24.     The ESRI San Antonio regional office also provides training.  For example, ESRI's "training team at the San Antonio office is made up of expert instructors and consultants" and offers "a wide range of learning options, including classes conducted on-site, at the customer client site, and online."  *See* https://www.esri.com/en-us/about/about-esri/san-antonio/overview.

25.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a), 1391(c), and 1400(b) because ESRI has a regular place of business and engages in infringing activities in this District.  ESRI regularly conducts business in this District and is subject to personal jurisdiction in this District.

## THE PATENTS-IN-SUIT

26.     On February 2, 2010, the USPTO duly and legally issued the '406 Patent, entitled "Multi-Infrastructure Modeling System," to inventors William J. Tolone and Bei-tseng Chu.  A true and correct copy of the '406 Patent is attached as Exhibit A.  Agingo is the owner and assignee of legal title in the '406 Patent and holds the right to sue and recover damages for infringement, including ongoing and past infringement.

27.     On June 5, 2012, the USPTO duly and legally issued the '436 Patent, entitled "Multi-Infrastructure Modeling System," to inventors William J. Tolone and Bei-tseng Chu.  A true and correct copy of the '436 Patent is attached as Exhibit B.  Agingo is the owner and assignee of legal title in the '436 Patent and holds the right to sue and recover damages for infringement, including ongoing and past infringement.

## THE PATENTED TECHNOLOGIES

28.     The Patents-in-Suit, both titled "Multi-Infrastructure Modeling System," cover, *inter alia*, multiple cause-and-effect agent based modeling and multiple predictive autonomous simulations that are based on interdependences between multiple and different critical infrastructure models.  In one common example, the Patented Technology can be used to combine

multiple agent-based critical infrastructure models (transmission and distribution for: electrical power, water, oil, transportation; as well has agent based population behavior model(s)) to provide the framework for a series of "what if" scenario analyses and predictive simulations.

29.    The predictive simulations of the Patents-in-Suit are not limited to only modeling two infrastructures, but can model a multitude of infrastructures that is only limited by computing capacity.  The focus infrastructure models are not only restricted to physical infrastructure models, but can also be models for critical infrastructure, financial systems, population behavior, data center computer racks, weather behavior, and more.

30.    The system developed from the Patented Technology provides, *inter alia*: (1) an agented rules-based methodology to describe interactions between infrastructures, (2) a visual interface for the development of the rules, (3) a visual interface for the creation of the impacts to the system of systems, (4) a simulation engine that evaluates all interactions in the system, and (5) a visual interface for evaluating the results of the cascading events from the initial impact(s).  The system has the concept of time, allowing a multi-impact scenario to be defined across time.

31.    The Patented Technology covers, *inter alia*, a system for simulating interdependencies between a plurality of infrastructure models including a first infrastructure data model that models a first infrastructure, a second infrastructure data model that models a second infrastructure, a simulation engine including a society of software agents and adapted to automatically produce, in response to a first change in the infrastructure data model, a second change in the infrastructure data model, and a user interface permitting a user to interact with the simulation engine.

32.    The Patented Technology further covers systems that are adapted to simulate interdependences between critical infrastructure models as well as interdependencies between an

infrastructure of one infrastructure category and an infrastructure of a different infrastructure category.

33.     Among other things, the Patented Technology allows GIS computers and mapping software to find, simulate, and predict locations for growth, which allows companies that consult such Patented GIS Technology to decide which markets to enter.

34.     Among other things, the Patented Technology allows GIS computers and mapping software to identify risk and solutions by visualizing and analyzing geospatial data (*e.g.*, various infrastructure data models) to simulate and/or predict location-specific impacts, such as demographic, traffic, environment, economics, and weather.  Companies use such Patented GIS Technology to, *inter alia*, understand, predict, and simulate where and why things/events are happening and plan what to do next.  Companies use such Patented GIS Technology to find, *inter alia*, optimal locations in retail site selection, managing assets, supply chain optimization, and building or maintaining vital infrastructure.

35.     Telecommunication companies use such Patented GIS Technology to, *inter alia*, enable signal propagation modeling across coverage areas to predict and/or simulate signal maintenance, and predict and/or simulate upgrades that strengthen signals in various coverage areas.  Telecommunication companies use such Patented GIS Technology to predict and/or simulate network performance data based on (i) model tree growth that impact signal, (ii) model seasonal weather changes that impact signals; and (iii) model population volumes, such as how many people are on the road or travel through train stations.  Telecommunications companies use such Patented GIS Technology to identify, predict, and/or simulate how a new signal tower can fill a gap in coverage or model how adding or removing a component might impact signal strength.

36.     Among other things, the Patented GIS Technology allows companies to use the simulator to measure return on investment from capital infrastructure projects—like raised roads or railways or reinforced bulkheads—against the potential cost of not taking action.  Among other things, the Patented GIS Technology provides a map-based simulation comparing scenarios that could be the difference between achieving and not achieving desired funding for climate resiliency.

37.     The Patented GIS Technology is used to protect supply chain infrastructures, including all the transportation modes that link goods producers and consumers around the world. The Patented Technology incorporates the use of simulation models such that a supply chain manager could see how an investment made next year might be affected by spring rainfall in 2030 on a specific section of train tracks.

38.     Prior to the invention, GIS technology computers did not have the capability to address the crucial and daunting task of infrastructure protection by providing innovative infrastructure modeling approaches to help identify and understand interdependencies, and vulnerabilities, like the Patented Technologies.

39.     Given the wide variation between different types of infrastructures, prior to the invention, efforts had to collectively involve large numbers of people of extremely disparate technological backgrounds or interests using a wide variety of techniques.

40.     In the technological field, prior to the patented invention, GIS computer technology was limited in its ability to analyze huge amounts of data representing the various elements of each infrastructure model and their interdependencies.

41.     In the field of the technology, prior to the invention, GIS computer technology did not adequately address the problem regarding the impact on critical infrastructure.  Critical

infrastructures typically involve multi-dimensional, highly complex collections of technologies, processes, and people, and as such, are vulnerable to potential catastrophic failures on many levels.

42.    In the technological field, prior GIS computers and platforms were deficient in modeling the interrelationships between or among critical infrastructures.  Prior GIS technological platforms could not adequately address the problem regarding the impact of critical infrastructure interdependencies.

43.    Prior to the invention, GIS visualization technologies and platforms, which overlay critical infrastructure components onto maps and satellite imagery: (i) could only support single infrastructure modeling and simulation; and (ii) were static and did not support interactions across infrastructure layers.

44.    Prior to the Patented Technology, there were no known technology applications for critical infrastructure integration that solved the problem of understanding the behavior of infrastructures and their interdependencies.

45.    The Patented Technology improves the prior GIS visualization computers / platforms by creating an innovative software-based simulation approach that is capable of handling a plurality of models representing different critical infrastructures.

46.    The Patented Technology also improves prior GIS technology visualization computers / platforms by creating a software agent-based approach to modeling and/or simulating multiple critical infrastructures with intra-dependencies and/or interdependencies, including predictive simulations.

## ESRI'S USE OF THE PATENTED TECHNOLOGY

47.    In 2008, pursuant to a non-disclosure agreement, IntePoint worked with ESRI to help improve ESRI's GIS technology and products, such as ArcGIS, by implementing the

innovations claimed in the Patents-in-Suit.  ESRI considered licensing the Patents-in-Suit and even incorporated the Patented Technology into its ArcGIS program.

48.    ESRI showcased the Patented Technologies at the FedUC09 conference, and ESRI's CEO publicly acknowledged the innovations embodied in the Patents-in-Suit and indicated that the Patented Technology really excited him.

49.    At the FedUC09 conference, Anthony Calamito (ESRI Engineer) gave a video demonstration of ESRI's ArcGIS with the incorporation of the Patented Technology (hereafter, the "ArcGIS Demo Video").  The ArcGIS Demo Video was preserved by IntePoint and Agingo.

50.    Demonstrating ESRI's ArcGIS incorporating the Patented Technology, Anthony Calamito (ESRI Engineer) explored advanced geographic methods to help predict and understand economic impacts on local geographies.

51.    A screenshot from the beginning of the ArcGIS Demo Video is shown below.



ArcGIS Demo Video at 0:00.

52.    On the ArcGIS Demo Video, at 0:27 to 1:25, ESRI stated:

Many of these companies represent multinational corporations who were influenced by factors across the globe.  However, we believe that the economy is also influenced by local factors such as demographics and culture.

Charting the average stock price for the top 10 publicly traded companies in two cities, we noticed varying results.  While all companies eventually fell with the larger global market, Charleston maintained a steady decline, whereas Pittsburgh actually saw an increase in average stock price before succumbing to global effects.

Further investigation into spatial patterns within the data reveals a correlation between local stock indices and types of businesses in the area.  Charleston is comprised of over 66% financial and real estate corporations, whereas Pittsburgh is only 10% financial but nearly 50% manufacturing.  As a result, the US Conference of Mayors has suggested a list of projects unique to each city.

53.    A screen shot at 1:19 of the ArcGIS Demo is shown below.



ArcGIS Demo Video at 1:19.

54.    On the ArcGIS Demo Video, at 1:26 to 1:47, ESRI further stated:

One such example is the airport stimulus project seen here.  The geographic approach can be used to understand the effects these projects would have on local economies.

Using *cause and effect simulation software from IntePoint*, we were able to predict the impact this project would have on housing, jobs, and businesses in the area.

55.    On the ArcGIS Demo Video, at 1:48 to 1:55, ESRI stated and displayed the following: "Here are the first order effects representing new jobs as a direct result of the airport project."



ArcGIS Demo Video at 1:51.

56.     On the ArcGIS Demo Video, at 1:56 to 2:01, ESRI stated and displayed the following: "Second order effects represent retail business activity resulting from the new airport workers."



ArcGIS Demo Video at 2:01.

57.     On the ArcGIS Demo Video, at 2:02 to 2:10, ESRI stated and displayed the following: "We can even see third order effects such as vacant homes becoming occupied around the location of newly hired employees."



ArcGIS Demo Video at 2:10.

58.    On the ArcGIS Demo Video, at 2:10 to 2:19, ESRI stated and displayed the following: "This example focused on one project, but in reality there were 157 projects suggested for the city of Charleston alone."



ArcGIS Demo Video at 2:16.

59.    On the ArcGIS Demo Video, at 2:25 to 3:05, ESRI stated and displayed the following:

> The **key to the IntePoint software is the creation of business rules unique to each geography and location**.   Rules specific to Charleston may be different than those for another area.   So for example, this rule actually highlights those aerospace businesses that may directly benefit from the airport project.   The second rule is actually going to highlight retail business growth predicted within 5 miles of new airport hires.   Yet another rule illustrates the location of vacant homes.   That may affect demographics.   These are just three of the 130 rules we used in our analysis.



ArcGIS Demo Video at 2:25.

      60.     On the ArcGIS Demo Video, at 3:05 to 3:59, ESRI stated and displayed the following:

> With our simulation complete, we now have a better geographic insight into how the stimulus was applied across the geography. These results were combined with total sales volume, industry type, and financial stress data from Dunn and Bradstreet to calculate an economic index for the counties. This index was intended to understand how the projects affected the overall local economy. . . . These predictive tools are just one way in which the geographic approach can help us to understand the potential effects that global economy, I'm sorry, that local geography has on global economy.



ArcGIS Demo Video at 3:21.

61.     In 2012, ESRI declined to license the Patents-in-Suit, and stopped working with IntePoint.  Nonetheless, ESRI retained and used the Patented Technologies, and further developed products and services that incorporate the inventions claimed in the Patents-in-Suit.  To date, ESRI continues to use and incorporate the inventions claimed in the Patents-in-Suit.

62.     For example, ESRI uses the Patented Technology in connection with, among other things, its Digital Twin Technology (www.esri.com/en-us/digital-twin/overview); Location Intelligence (www.esri.com/en-us/location-intelligence/overview); and Digital Transformation (www.esri.com/en-us/digital-transformation/overview).

63.     By way of further example, ESRI uses the Patented Technology in connection with, among other things, its ArcGIS products and services, including but not limited to "ArcGIS Enterprise and Extensions," "ArcGIS Pro and Extensions," "Developer Technology," "Apps" and "Focused Products". *See, e.g.*, www.esri.com/en-us/arcgis/products/index.

64.     ESRI has continued to incorporate the Patented Technology into the ArcGIS platform and services without notifying Agingo.  ESRI intentionally did not inform IntePoint or Agingo of ESRI's intent to create versions of the ArcGIS incorporating the Patented Technology and developed additional features of the ArcGIS platform and services that are covered by the Patents-in-Suit.

65.     As a result of incorporating the Patented Technology, ESRI became the world leader in GIS technology, with at least 43% of that global market share and estimated annual revenues of approximately $1.1 billion in 2020.

## ESRI INFRINGES THE PATENTS-IN-SUIT AND HAS BEEN DOING SO WILLFULLY

66.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each of the preceding paragraphs, as if fully set forth herein.

67.     ESRI has had actual knowledge of the Patents-in-Suit prior to the filing of this complaint.  In addition, ESRI has had actual knowledge of the patent applications that led to the issuance of the Patents-in-Suit prior to the filing of this complaint.

68.     ESRI has had actual knowledge of the Patents-in-Suit by virtue of their decision to not license the Patented Technology.

69.     ESRI has continued to make, use, offer to sell, sell, and/or import products, such as the ArcGIS within the United States that infringe one or more claims of the Patents-in-Suit.  ESRI's continued infringement of the one or more claims of the Patents-in-Suit is willful.

70.    At a minimum, ESRI has been willfully blind to the fact that its products and services infringe one or more claims of each of the Patents-in-Suit.  ESRI should have known that the accused products and services infringe one or more claims of each of the Patents-in-Suit.

## COUNT I
## INFRINGEMENT OF THE '406 PATENT

71.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each of the preceding paragraphs, as if fully set forth herein.

72.    The cause of action for ESRI's infringement of the '406 Patent arises under 35 U.S.C. §§ 271(a), 271(b), and/or 271(c).

73.    The attached Exhibit C identifies by example where and how each element of one or more claims of the '406 Patent are found with respect to, at least, ESRI's ArcGIS as to this Count.

74.    ESRI has directly and/or indirectly infringed one or more claims of the '406 patents, either literally or under the doctrine of equivalents.  *See* Ex. C.

75.    In violation of 35 U.S.C. § 271(a), ESRI has directly infringed and continues to directly infringe one or more claims of the '406 Patent by making, using, offering to sell, selling within, and/or importing into the United States, at least, the accused ESRI products, including the ArcGIS, that practice one or more claims of the '406 Patent.  ESRI practices every element of at least one claim of the '406 Patent with respect to each accused product.

76.    In violation of 35 U.S.C. § 271(b), ESRI has indirectly infringed and continues to indirectly infringe at least one claim of the '406 Patent by actively inducing third parties (*e.g.*, ESRI's customers of, at least, the accused ArcGIS and related services (*see* www.esri.com/en-us/arcgis/products/index)) to make, use, offer to sell, sell within, and/or import into the United States, at least, the accused infringing products to directly infringe one or more claims of the '406

Patent.  The third party (*e.g.*, telecommunication companies, High-Tech companies, fleet management companies, transportation companies, utilities, *etc.*) practices every element of at least one claim of the '406 Patent under this inducement by ESRI.  ESRI has taken and continues to take active steps to encourage and facilitate third parties to directly infringe one or more claims of the '406 Patent with the specific intent to infringe or with willful blindness to that infringement.  ESRI's affirmative acts include, without limitation, providing instructions, videos, demonstrations, operating manuals, educational materials, website materials, conferences, and technical support to third parties that aid and abet or facilitate the direct infringement of one or more claims of the '406 Patent.  ESRI has a training website (https://www.esri.com/training/) that provides registered customers access to training materials.  A user directly infringes one or more claims when they use the accused ESRI's ArcGIS, for their intended purpose in accordance with ESRI's instructions.  ESRI has been, and currently is, indirectly infringing at least one or more claims of the '406 Patent by actively inducing its customers' direct infringement within the United States with knowledge that the induced acts constitute patent infringement.

77.    In violation of 35 U.S.C. § 271(c), ESRI has contributed to and continues to contribute to the infringement of one or more claims of the '406 Patent by, among other things, offering to sell, selling within, and/or importing into the United States systems incorporating the patented infrastructure modeling systems, including without limitation the ArcGIS, and such systems embody a material part of the claimed inventions in the '406 Patent, knowing that such products and/or components were specifically made or specially adapted for use in an infringing manner, and that they are not staple articles of commerce suitable for a substantial non-infringing use.  ESRI has been, and currently is, indirectly infringing at least one or more claims of the '406 Patent by actively contributing to its customers' direct infringement within the United States.

78.     ESRI's infringement of the '406 Patent has been willful and continues to be willful. ESRI has had and has actual knowledge of the '406 Patent and that its activities infringe the '406 Patent.   For example, ESRI engaged in extensive interactions with IntePoint relating to the Patented Technology.   ESRI has infringed and continues to infringe despite having knowledge of its infringement.   At a minimum, ESRI willfully blinded itself to these facts.

79.     ESRI has committed and continues to commit these acts of infringement of the '406 Patent without a license or authorization.

80.     As a result of ESRI's infringement of the '406 Patent, Agingo has suffered damages and will continue to suffer damages, including damages awardable under 35 U.S.C. §§ 284 and 285.

<u>**COUNT II**</u>
<u>**INFRINGEMENT OF THE '436 Patent**</u>

81.     Plaintiff repeats, realleges, and incorporates by reference the allegations contained in each of the preceding paragraphs, as if fully set forth herein.

82.     The cause of action for ESRI's infringement of the '436 Patent arises under 35 U.S.C. §§ 271(a), 271(b), and/or 271(c).

83.     The attached Exhibit D identifies by example where and how each element of one or more claims of the '436 Patent are found with respect to, at least, ESRI's ArcGIS as to this Count.

84.     ESRI has directly and/or indirectly infringed one or more claims of the '436 patents, either literally or under the doctrine of equivalents.   *See* Ex. D.

85.     In violation of 35 U.S.C. § 271(a), ESRI has directly infringed and continues to directly infringe one or more claims of the '436 Patent by making, using, offering to sell, selling within, and/or importing into the United States, at least, the accused ESRI's ArcGIS that practice

one or more claims of the '436 Patent. ESRI practices every element of at least one claim of the '436 Patent with respect to each accused product.

86.    In violation of 35 U.S.C. § 271(b), ESRI has indirectly infringed and continues to indirectly infringe at least one claim of the '436 Patent by actively inducing third parties (*e.g.*, ESRI's customers of, at least, the accused ArcGIS and related services (*see* www.esri.com/en-us/arcgis/products/index)) to make, use, offer to sell, sell within, and/or import into the United States, at least, the accused infringing products to directly infringe one or more claims of the '436 Patent. The third party (*e.g.*, telecommunication companies, High-Tech companies, fleet management companies, transportation companies, utilities, *etc.*) practices every element of at least one claim of the '436 Patent under this inducement by ESRI. ESRI has taken and continues to take active steps to encourage and facilitate third parties to directly infringe one or more claims of the '436 Patent with the specific intent to infringe or with willful blindness to that infringement. ESRI's affirmative acts include, without limitation, providing instructions, videos, demonstrations, operating manuals, educational materials, website materials, conferences, and technical support to third parties that aid and abet or facilitate the direct infringement of one or more claims of the '436 Patent. ESRI has a training website (https://www.esri.com/training/) which provides registered customers access to training materials. A user directly infringes one or more claims when they use the accused ESRI's ArcGIS, for their intended purpose in accordance with ESRI's instructions. ESRI has been, and currently is, indirectly infringing at least one or more claims of the '436 Patent by actively inducing its customers' direct infringement within the United States with knowledge that the induced acts constitute patent infringement.

87.    In violation of 35 U.S.C. § 271(c), ESRI has contributed to and continues to contribute to the infringement of one or more claims of the '436 Patent by, among other things,

offering to sell, selling within, and/or importing into the United States systems incorporating the patented infrastructure modeling systems, including without limitation the ArcGIS, and such systems embody a material part of the claimed inventions in the '436 Patent, knowing that such products and/or components were specifically made or specially adapted for use in an infringing manner, and that they are not staple articles of commerce suitable for a substantial non-infringing use. ESRI has been, and currently is, indirectly infringing at least one or more claims of the '436 Patent by actively contributing to its customers' direct infringement within the United States.

88.    ESRI's infringement of the '436 Patent has been willful and continues to be willful. ESRI has had and has actual knowledge of the '436 Patent and that its activities infringe the '436 Patent. For example, ESRI has engaged in extensive interactions with IntePoint and incorporated the Patented Technology. ESRI has infringed and continues to infringe despite having knowledge of its infringement. At a minimum, ESRI willfully blinded itself to these facts.

89.    ESRI has committed and continues to commit these acts of infringement of the '436 Patent without a license or authorization.

90.    As a result of ESRI's infringement of the '436 Patent, Agingo has suffered damages and will continue to suffer damages, including damages awardable under 35 U.S.C. §§ 284 and 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A judgment that Defendant has directly infringed each of the Patents-in-Suit under 35 U.S.C. § 271(a);

B.    A judgment that Defendant has induced the infringement by third-party users of each of the Patents-in-Suit under 35 U.S.C. § 271(b);

C.      A judgment that Defendant has contributed to the infringement of third-party users of each of the Patents-in-Suit under 35 U.S.C. § 271(c);

D.      A judgment and order that Plaintiff be awarded all damages adequate to compensate Plaintiff for Defendant's past infringement and any continuing or future infringement of the Patents-in-Suit until the date such judgment is entered, including pre- and post-judgment interest, cost, and disbursement as justified under 35 U.S.C. § 284;

E.      A judgment and order that the damages awarded to Plaintiff with respect to each of the Patents-in-Suit be increased up to three times, in view of Defendant's willful infringement, in accordance with 35 U.S.C. § 284;

F.      A judgment and order that this case be declared an exceptional one in favor of Plaintiff under 35 U.S.C. § 285, and that Plaintiff be awarded its reasonable attorneys' fees and other expenses incurred in connection with this action in accordance with 35 U.S.C. § 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

G.      A judgment and order that Plaintiff be awarded a compulsory ongoing royalty;

H.      A judgment and order that Plaintiff be awarded all equitable relief the Court deems just and proper as a result of Defendant's infringement, including an injunction;

I.      A judgment and order awarding Plaintiff cost associated with bringing this action; and

J.      Such other and further relief the Court deems just and equitable.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: September 3, 2025

Respectfully submitted,

FOX ROTHSCHILD LLP

<u>/s/ Andy Nikolopoulos</u>
Andy Nikolopoulos (Texas Bar #24044852)
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
anikolopoulos@foxrothschild.com
Telephone: (214) 231-5776
Fax: (972) 404-0516

Wanda D. French-Brown (to be *pro hac vice*)
James H. McConnell (to be *pro hac vice*)
Mary Jean Kim (to be *pro hac vice*)
Jonathan Pepin (to be *pro hac vice*)
101 Park Avenue, 17th Floor
New York, NY 10178
wfrench-brown@foxrothschild.com
jmcconnell@foxrothschild.com
mkim@foxrothschild.com
jpepin@foxrothschild.com
Telephone: (646) 601-7617
Fax: (212) 692-0940

Jeff E. Schwartz (to be *pro hac vice*)
2020 K. Street, N.W., Suite 500
Washington, DC 20006
jeschwartz@foxrothschild.com
Telephone: (202) 461-3100
Fax: (202) 461-3102

Ryan N. Miller (to be *pro hac vice*)
2001 Market Street, Suite 1700
Philadelphia, PA 19103
rmiller@foxrothschild.com
Telephone: (215) 299-2000
Fax: (215) 299.2150

*Attorneys for Plaintiff Agingo Corporation*